Johnson, J.
Defendant contends that the indictment is defective in that it is indefinite and does not sufficiently set forth the alleged false pretenses and does not allege that the pretenses were in fact false, and further that the indictment does not charge a crime under the law.
This court has many times declared that a criminal offense must be charged with reasonable certainty in the indictment so as' to apprise the defendant of that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible. And an indictment for obtaining money or property by false pretenses must aver all of the material facts necessary to be proven in order to convict, and that the false pretenses were false in fact and induced the owner to part with his property. Dillingham v. State, 5 Ohio St., 280; Schleisinger v. State, 11 Ohio St., 669; Du Brul v. State, 80 Ohio St., 52; People v. Behee, 90 Mich., 356.
*20 First. It will be noted that this indictment contains no averment that there was any attempt by Plorton to induce Linneman to purchase any counterfeit money, or that Linneman did purchase any such money. There is no allegation that Horton sold or agreed to sell or deliver any counterfeit money or any other thing to Linneman by which Linneman was induced to and did pay him the $65.00.
In Schleisinger v. State, 11 Ohio St., 669, the court say at page 673: “There is however no colloquium set forth in the indictment showing a negotiation between the parties and that the representations and pretenses were made with intent thereby to obtain from said Woods and Pew any goods whatsoever.”
The important matter is that there is no allegation of any transaction, contract or negotiation in which, by reason of the false pretenses referred to, Horton obtained the money from Linneman.
On the trial the prosecuting witness described the transaction in question and testified that defendant told him he was selling counterfeit money three for one, and that he Linneman gave defendant $65.00 for which defendant promised to give him $300.00 counterfeit money in eight days.
As pointed out already the indictment charges only that defendant falsely pretended that he was selling counterfeit money. It is not alleged that he pretended to have counterfeit money or that he was delivering it. But according to the testimony of the prosecuting witness that pretense was not a false pretense because he was then selling *21 and did sell to him counterfeit money to be delivered at a future time.
The promise to deliver the counterfeit money at a future time could not be made the basis of a conviction for crime. Dillingham v. State, 5 Ohio St., 280; State v. Petty, 119 Mo., 425; Commonwealth v. Drew, 19 Pick., 179; People v. Miller, 169 N. Y., 339.
Plaintiff in error challenges the indictment on two other grounds:
1. That the false representations averred in the indictment were such as no man had the right to rely on and that in the absence of any alleged disability on the part of the prosecutor they are not sufficient to sustain a conviction.
2. That there was a common criminal design between the parties.
Many decisions are cited by the parties in support of their respective views of these questions and they disclose much conflict of authority.
As to the first proposition there are cases which hold that where the pretense is absurd or irrational, and the prosecutor had at the time the means of detection, such pretense is not within the law of crimes.
It would not be profitable here to discuss these cases in detail. We agree with the view that many of such holdings have gone too far. The weak and feeble have equal rights with the strong.
The careless or unwary are entitled to the protection of these false pretense statutes as well as of all other statutes. Most people think the fanciful story of a confidence man who sells a *22 gold brick is absurd and should carry its own refutation, but many inexperienced, unwary but honest men have been caught by it and no one would think the offense was not an indictable one.
The second of the above contentions presents a different question and one as to which there is a diversity of decisions. Can there be a conviction for obtaining money by false pretenses when the transaction, on the part of the person from whom the money is obtained, would have been unlawful if the representations of the defendant had been true, or if one pretends to be engaged in the commission of a particular crime, when in fact he is not so engaged, can he be convicted for obtaining money by false pretense, from one who desired to participate in.the same crime and who parted with his money in that behalf?
In McCord v. People, 46 N. Y., 470, the accused falsely pretended to be an officer with a warrant to arrest the prosecuting witness, and he thereby induced the witness to deliver to him certain property. The court held that the prosecutor parted with his property as an inducement to a supposed officer to violate the law and his duty and that the indictment could not be sustained. The court say at page 472: “Neither the law, or public policy designs the protection of rogues in their dealings with each other, or to insure fair dealing and truthfulness, as between each other, in their dishonest practices. The design of the law is to protect those who, for some honest purpose are induced, upon false and fraudulent representations, to give credit or part with *23 their property to another, and not to protect those who for unworthy or illegal purposes, part with their goods.”
This case has been followed in a number of New York cases and in some other jurisdictions. People v. Klock, 106 N. Y. Supp., 267; People v. Stetson, 4 Barb., 152; People v. Tompkins, 186 N. Y., 413; State v. Crowley, 41 Wis., 272; Foster v. State, 8 Ga. App., 119. State v. Crowley and Foster v. State were cases in which the false representations were made in transactions for the sale of counterfeit money. The court in Foster v. State say: “This, case is also to be distinguished from those cases in which the defendant, by imposing upon the credulity or weak-mindedness of the prosecutor has caused him to pay money for something which could not be of value, but which the prosecutor was led to believe was in fact so. In such cases a prosecution for cheating and swindling may lie. But in this case, the prosecutrix acted with her eyes open; she admitted that she knew that the money she was to get would not be good money.”
A different rule has been adopted in a number of states. Generally stated, the rule in those states is, that, it is no defense to an indictment for obtaining money under false pretenses that the transaction in which the money was paid was illegal. Commonwealth v. O’Brien, 172 Mass., 248; People v. Martin, 102 Cal., 558; People v. Watson, 75 Mich., 582; Lovell v. State, 48 Tex. Cr., 85; In re Cummins, 16 Colo., 451; Commonwealth v. Henry, 22 Pa. St., 253; 2 Bishop Crim. Law, Sec. 469.
*24 In Commonwealth v. O’Brien, 172 Mass., 248, after a discussion of the different views taken of the question the court say: “With the greatest respect for the New York and Wisconsin courts we think this end is more effectually reached if we do not read into the absolute words of the statute an implied exception, which allows a knave to cheat any one out of his money, if the knave can succeed in persuading his victim into a scheme, which has any technical illegality on the victim’s side. The question of allowing the latter a personal remedy is entirely different.”
In People v. Tompkins, 186 N. Y., 413, defendant induced one Felix to part with a large sum of money on the false representation that defendant as an employe of the Western Union Telegraph Company had means of obtaining advance information as to results of horse races, which were being betted on in a certain pool room. Felix went to the pool room and made a bet on a certain horse falsely named as winner. The court while yielding to the authority of McCord v. People and of what it states to be a firmly established rule in that state, yet questions the soundness of. the rule and in its syllabus suggests the “alteration of the rule to the legislature.” In the opinion it is stated that the rule is at variance with a more reasonable view and the decisions in at least twelve states.
The primary object sought to be accomplished in prosecutions for crime is the suppression of crime. The effort is one to protect the public and prevent wrongdoing.
*25 If it were a civil proceeding of course where the injured person is a party to the unlawful enterprise he would not be heard to complain and the law would leave the parties where it finds them.
There is a natural feeling that, where two persons are co-offenders, it is unjust that one should be punished and the other not, especially that one should be permitted to invoice the aid of the courts to punish his confederate while he escapes himself. But the dissatisfaction should be, not that one is punished, but rather that the other is not. It is no argument in favor of either that the other equally deserves conviction.
The statute of Ohio, Section 7076, Revised Statutes, which denounces obtaining money or property by false pretenses, is broad and complete. “Whoever, by any false pretense, with intent to defraud, obtains from any person, any thing of value.”
Shall we read into this criminal statute the principle of civil jurisprudence which requires the complaining party to come into court with clean hands and thus deny to the state (in the effort to prevent wrongdoing) the equally sound principle of criminal law that the guilt of one man shall not be received as an excuse for that of another. We think to so hold would in some degree throw around crime the protection of the law.
If a sharper working a confidence game or a scheme to obtain money by false pretenses could weave into his tricky negotiation some element which is unlawful and criminal he could hold it *26 over the head of his victim and could call it to his aid in escaping prosecution.
However for the reasons already given in this opinion we feel forced to the conclusion that the indictment in this case does not state the accusation against defendant in such a manner as to directly and specifically advise him of what he must prepare to meet and that it does not meet the requirements of well-settled rules so as to secure to him the constitutional safeguard of the right to demand the nature and cause of the charge against him, and therefore the motion to quash and the demurrer should have been sustained.
For error in overruling, the judgments of the courts below are reversed.

Judgments reversed and judgment for plaintiff in error.

Spear, C. J., Davis, Shauck, Price and Donahue, JJ., concur, in the judgment. Davis, J., dissents to second proposition of syllabus.