## THOMAS D. WYATT, Appellant *v.* THE STATE OF NEVADA, Respondent.

No. 4417

December 18, 1961                    367 P.2d 104

(Rehearing denied January 25, 1962.)

*Samuel B. Francovich* and *Brian L. Hall,* of Reno, and *Harry E. Claiborne,* of Las Vegas, for Appellant.

*Roger D. Foley,* Attorney General, *William J. Raggio,* District Attorney, *Drake DeLanoy,* and *Eric L. Richards,* Deputy District Attorneys, Washoe County, for Respondent.

## OPINION

By the Court, MCNAMEE, J.:

Appellant, a licensed physician, was found guilty by jury verdict of attempted abortion. Appeal is from the order denying a new trial.

Five errors are assigned and each is considered separately.

1. *Admission of evidence of other abortions performed by appellant.*

While appellant concedes that in an attempted abortion trial prior criminal acts of abortion by appellant are properly admissible for the purpose of showing criminal intent,[1] he maintains that the method by which such evidence can be introduced must be the same as that employed in Nester v. State, 75 Nev. 41, 334 P.2d 524, 527, where the trial judge heard the substance of another crime outside the presence of a jury prior to its admission in evidence. This assertion is without merit.

In Nester we stated the general rule that on the trial of a person accused of a crime, proof of a distinct independent offense is inadmissible. We noted, however, certain exceptions to this rule, one of which is that evidence of other crimes is competent to prove the specific crime charged, when it tends to establish intent. Because such evidence manifestly creates a prejudice which may cause injustice to be made to a defendant "the relevance of evidence which tends to prove a crime other than that charged must be examined with care, even if it fits properly, within one or more of the exceptions. * * * In all such cases as this, then, an intermediate step must be taken between the determination of relevancy by the court and the weighing of the evidence by the jury * * * [to enable the trial judge] to balance the prejudicial and distracting impact of the evidence against its probative weight and persuasiveness."

[1]See State v. Elges, 69 Nev. 330, 251 P.2d 590.

Such an intermediate step was taken in the instant case. Outside the presence of the jury the trial judge ascertained the type of evidence to be offered, heard arguments of counsel, and determined that it would be admissible. Even though the trial judge should permit the jury to hear such evidence without first taking the "intermediate step," it would be immaterial on review. If he permitted the evidence to remain in the record, it would be presumed that the probative weight of the proffered evidence, in his balanced judgment, outweighed its mere prejudice. The preferable method, however, is for the trial judge to hear this evidence, or ascertain its nature, outside the presence of the jury in order to prevent the loss of time and expense which could be caused by a mistrial or new trial resulting from a later determination that the evidence should not have been received.

2. *Failure of the trial court to instruct the jury relative to entrapment.*

Appellant contends it was error for the lower court to refuse to give the following proposed instruction:

"You are instructed that if you should find that the defendant attempted to perform the operation as charged in the indictment, nevertheless, if you further find that the intent to commit such act did not originate with the defendant and he was not carrying out his own criminal purpose, but that the act was suggested by another person acting with the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the act so committed, and your verdict should be for the defendant."

In the case of In re Davidson, 64 Nev. 514, 520, 186 P.2d 354, 357, this court quoted with approval the text from 22 C.J.S., Criminal Law, sec. 45, which states that the defense of entrapment is not available where the officer or other person acted in good faith "for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent."

In re Wright, 69 Nev. 258, 263, 248 P.2d 1080, 1082,

the principal defense was one of entrapment. There we said:

"It is first contended that the record does not show any foundation or basis for such resort to a decoy. This contention we must reject. It is clear from the record that Carpenter's employers believed and had reasonable cause to believe not only that petitioner was a person disposed to commit the offense, but that he had already committed a similar offense on at least one occasion. * * *

"Next it is contended that the offense was committed at the instigation and subject to the persuasion and inducement of Carpenter; that the criminal design originated not with petitioner but with Carpenter himself; * * * We are satisfied from the record, however, that such was not the case. The record discloses that Carpenter merely presented to petitioner the opportunity to commit the offense which opportunity was freely accepted by petitioner. Carpenter's course was simply to state his problem: his need for divorce; his need for urgency; then, in effect: 'That's my problem. You tell me what I've got to do and what it will cost.' "

See also People v. Raffington, 98 Cal.App.2d 455, 460, 220 P.2d 967, 971, where it is stated: "Entrapment is available as a defense when the criminal design originates with the officer who, by persuasion or deceit, entices a law-abiding citizen to commit a crime which he would not have committed in the absence of such inducement. * * * There is no evidence that defendant was lured into the attempt to commit a criminal offense by persuasion or inducement. The conversation was between persons who professed to desire the abortion to be performed and defendant, willing to perform upon the payment of his requested fee. In such case enticement or entrapment is not available as a defense * * *."

These cases, however, were not concerned with the question whether a requested instruction on entrapment must be given in a jury trial.

The attempted abortion of which appellant was convicted occurred on August 11, 1960. The evidence shows

that appellant had in his office all the instrumentalities with which abortions are produced. Testimony of witnesses was to the effect that he had performed the following acts of criminal abortion: Three on one Schauwecker, the last being as late as June 1960; three on one Wells, the last in March 1960; and one on a young girl in December 1959. It was disclosed at the trial that appellant had tissue of human placental matter from two separate female individuals wrapped in newspaper in his desk drawer at the time of his arrest on August 11, 1960.

With reference to the present charge, the record shows that Wilma Askew consulted the appellant at his home and clinic on or about August 8, 1960 regarding the pregnancy of her "sister," Grace Jose. After a brief discussion appellant said: "Poor kid, how far along is she? * * * If it is more than two months I won't touch her." Appellant then made the preliminary arrangements for the operation and set the time therefor. When Wilma Askew commented: "Well, I thought an abortion was like an operation," appellant replied: "No, not the way I do it."

At the time of the arrest by officer Manin appellant was in his office or treatment room, standing and facing Grace Jose who was lying back down on a table with her legs up in stirrups.

Appellant testified that he had not attempted to commit an abortion on Grace Jose, and denied that he ever committed an abortion on any of the three persons above mentioned, and yet he asserts the defense of entrapment on appeal.

Entrapment is an affirmative defense and one that a defendant must prove. State v. Good, 110 Ohio App. 415, 165 N.E.2d 28. Appellant offered no evidence, whatsoever, which could sustain such a defense. In fact his counsel stated to the court during the trial that appellant was not relying on the defense of entrapment. His only evidence pertaining to the alleged commission of the offense with which he was charged

consisted of his own testimony of denial as aforesaid. Although the evidence discloses that the district attorney directed certain persons to go to the appellant for the purpose of requesting him to place himself in a position which would be in violation of a criminal statute, and he does so, this alone does not constitute entrapment. People v. Conrad, 102 App.Div. 566, 92 N.Y.S. 606. It is merely the furnishing of an opportunity for the commission of the crime, as mentioned in the Nevada cases of In re Davidson and In re Wright, supra. Further evidence must be produced to show that the criminal intent resulted from persuasion or inducement. People v. Raffington, supra.

Although it is true that a defendant is entitled to an instruction on his theory of the case as disclosed by the evidence, the court is not required to instruct the jury on some matter of defense which is not supported by any evidence, and particularly with respect to a defense expressly repudiated. State v. Moore, 48 Nev. 405, 233 P. 523; State v. Alsup, 69 Nev. 121, 243 P.2d 256.

In People v. Cummings, 141 Cal.App.2d 193, 201, 296 P.2d 610, 615, where the defendant was convicted of abortion and contended that the trial court committed prejudicial error in refusing to instruct the jury on the subject of entrapment, the court said:

"While it is well settled that a defendant is entitled to instructions based on the theory of his defense, the court may refuse proffered instructions on a theory that is not supported by substantial evidence. * * * Was there substantial evidence of entrapment in this case? A few legal guideposts will assist in answering this question. * * * [Citing People v. Lindsey, 91 Cal.App.2d 914, 205 P.2d 1114] 'Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary

to prosecute him therefor, constitutes no defense. [Citations.] If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment.' * * * More recently it was held: 'It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment.' In People v. Bowlby, * * * the court pointed out: 'It is essential to such a defense that the criminal intent originate with the one who is alleged to have entrapped defendant and that the crime be induced by him through persuasion or the like. His merely furnishing the occasion for one engaged in illegal activities to ply his trade does not amount to entrapment.' * * * Since there was no substantial evidence of entrapment it was not error to refuse to instruct the jury on that subject."

The cases of People v. Reed, 128 Cal.App.2d 499, 275 P.2d 633, and People v. Ballard, 167 Cal.App.2d 803, 335 P.2d 204, cited by appellant, appear to require a jury instruction relative to entrapment. We disapprove them, and note that each case cited an earlier decision of the same court, People v. Alamillo, 113 Cal.App.2d 617, 248 P.2d 421, as authority. Alamillo affirmed the trial court's refusal to instruct on entrapment. We believe the principle announced in Alamillo correctly states the law.

Under the circumstances of this case and the authorities cited, we conclude that the trial court's refusal to grant the requested instruction was not error.

3. *Admission of testimony claimed to be hearsay.*

The first witness at the trial was one Rouse, an investigator for the California Board of Medical Examiners. He testified that he assisted the Washoe County District Attorney's office in investigating appellant. When asked to relate how that came about, he answered: "About the end of 1959, in making this investigation

in Shasta County and in talking with the district attorney up there, the name of Dr. Wyatt came up, and in connection with that reference was made or some mention was made of abortion activity that Dr. Wyatt might be in. Subsequent to that, Dr. Wyatt's name was again mentioned, this time in the San Francisco Bay Area in this regard."

Appellant's counsel then asked the witness: "You indicated that you received some conversation, or had some conversation with someone in the Bay Area?" To which the witness answered: "That's correct."

The following objection was then made: "Your honor, undoubtedly this is all hearsay. He did testify to the fact that he spoke to the Washoe County District Attorney's office, and I believe that is hearsay. But be that as it may, as to his comment as to some conversation he had in the Bay Area with a party unknown, it is clearly hearsay."

The objection was overruled on the ground that the witness "had not related any conversation which would be hearsay."

It is to be noted that no objection was made to the fact that the answer to the first question mentioned above contained matter which might be prejudicial because of the words "abortion activity." The objection went merely to the fact that the witness had received some conversation with someone in the Bay Area. A witness in testifying that a conversation had taken place with a third party testifies to a fact within his knowledge. Such testimony is not hearsay. The question was meant only to show the reason why the witness had become associated in an investigation with the Washoe County District Attorney's office, and his answer gave as a reason that some mention was made of abortion activities that Dr. Wyatt might be in. The witness was not concerned with the truth or falsity of what was mentioned but merely the fact that mention of such activity had taken place. This fact was wholly within his own knowledge and was relevant during his preliminary examination to show his reason for

being associated with the district attorney's office of Washoe County. Such evidence is admitted for such purpose not as hearsay but as original evidence. People v. Henry, 86 Cal.App.2d 785, 195 P.2d 478. In any event, the statement cannot be considered prejudicial in view of appellant's own admission on cross-examination that his license as a physician and surgeon had been temporarily revoked in California for abortion.

4. *Admission in evidence of Exhibits 1 through 46 obtained on entry without a search warrant.*

In entering appellant's office for the purpose of making the arrest, the arresting officer Manin had no search warrant. Manin took appellant into his custody and at that time collected certain medical instruments and other articles that were in the room. When these were about to be marked for identification, prior to their introduction into evidence through a witness subsequently to be called, appellant's counsel at that time stated that he wished to interrogate Manin under a voir dire examination to determine in what manner Manin obtained possession of the articles. When this examination disclosed that Manin had no search warrant at the time of entry, appellant's counsel stated: "We will interpose an objection on the basis that no proper warrant of arrest was held by the arresting officers, and, therefore, any introduction of evidence through this officer relative to evidence he sequestered in the home of Dr. Wyatt is improper." The objection was overruled because the examination further disclosed that by means of a radio message transmitted from the home, Manin was notified that appellant was in the act of committing a felony. The court then stated that the articles would be marked for identification "reserving to counsel the right to object to each one as proposed." The proposed exhibits were thereupon numbered 1 through 46 and each was identified by Manin. A doctor then identified each article and its use. Thereupon, the district attorney offered items 1 through 46 in evidence. The following then appears in the record:

"MR. FRANCOVICH: Your Honor, we will object to the offer on the basis that all of these items are not

germane to the issue and they are immaterial to the offense that is alleged in this matter. Now, there are instruments of various kinds here, and I am sure the District Attorney doesn't wish to indicate by their introduction that all of these instruments and medicines and other matters were used with regard to the offense alleged that this defendant committed, and on that basis and on the basis that they lack any materiality to the alleged offense, we will object to the introduction.

"THE COURT: You may be heard.

"MR. DeLANOY: The State takes the position, your Honor, that each instrument involved would itself have multiple purposes. However, I think it is only fair to the jury to allow them to see the instruments, the set-up that the defendant had in this matter, and we have had the testimony of Dr. Stewart. He said that they are used generally in medical offices, and particularly some of them in gynecological and obstetrics offices, and he has been specific as to the use of some of the instruments, and I feel that they are material.

"THE COURT: Some of these offered exhibits are a bit remote, but they do form the entire picture of the surroundings, the general facts and circumstances and place and locale, so the objection to the introduction is overruled and they may be admitted in evidence as State's Exhibits 1 through 46, inclusive.

"MR. FRANCOVICH: Your Honor, for the purposes of the record and without attempting to be argumentative to your Honor's ruling, may I also include this in the objection: That the matters pertaining to the instruments and medicines and other things that were obtained by Officer Manin at Crystal Bay, Nevada, in the defendant's home on August 11th, are objectionable to introduction on the basis that they highly prejudice the doctor in this manner and they are of a nature that well may be inflammatory to the jury and unduly prejudiced against this defendant, my purpose merely being I realize your Honor's ruling and I wanted the record to show that as part of my objection, also.

"THE COURT: You may have the record so show."

It is to be noted that appellant did not renew his claim that the exhibits were inadmissible upon the ground of illegal search and seizure. In Kelly v. State, 76 Nev. 65, 348 P.2d 966, we held that an objection to evidence on a ground not specified in the lower court would not be considered on appeal. Without intending to modify that holding in any way we deem it necessary to consider the present assertion that these exhibits should not have been received in evidence, in view of the decision of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, decided on June 19, 1961, and after the judgment of conviction in the instant case.

Evidence unlawfully obtained through unreasonable searches and seizures is excluded in the federal courts under U.S. Const. Amend. IV. Before the Mapp case, evidence thus unlawfully obtained was nevertheless admissible in most state jurisdictions. The Mapp case holds that all the states are required by reason of the due process clause of the Fourteenth Amendment, to exclude such evidence from criminal trials in state courts. This case specifically overrules Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

California overturned its long-established law and adopted the exclusionary rule in People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513 (1955). In applying the exclusionary rule after its adoption the California Supreme Court has greatly broadened the power of the police to search and make arrests. See 4 U.C.L.A. L.Rev. 252; 9 Stan. L.Rev. 515; 45 Calif. L.Rev. 50. Even under the exclusionary rule where the search in question is conducted without a warrant and without requesting permission to enter, the criterion of whether the search is lawful is its reasonableness. If an arresting officer has reasonable cause[2] to believe that a felony is being committed, the entry of a person's premises without a warrant for the purpose of arresting such person as the perpetrator of the crime is not

[2]For a definition of reasonable cause see People v. Yet Ning Yee, 145 Cal.App.2d 513, 302 P.2d 616.

unlawful. People v. Boyles, 45 Cal.2d 652, 290 P.2d 535, 537. There the court stated: "It is settled, however, that reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial of the issue of guilt."

The California Supreme Court held in the Boyles case under a statute identical to the Nevada statute[3] that when an officer's belief of defendant's guilt is based on reasonable cause, and a felony has in fact been committed, not only are the requirements of the statute satisfied, but a search incident to an arrest made before or after the arrest is reasonable. See People v. Sayles, 140 Cal.App.2d 657, 295 P.2d 579. Articles, which otherwise would be admissible as evidence, seized as a result of such a search are not to be rejected as evidence on the ground of an unreasonable search and seizure. People v. Hammond, 54 Cal.2d 846, 357 P.2d 289, 9 Cal.Rptr. 233; DiBella v. United States, 2 Cir., 284 Fed.2d 897. In other words, evidence obtained during a search without a warrant if the search is incident to a legal arrest, and so long as the search is in close proximity to the place of defendant's arrest, is not evidence obtained by an illegal search and seizure. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; People v. Gorg, 45 Cal.2d 776, 291 P.2d 469. The Mapp case in no manner purports to change this rule.

For the reasons hereinabove stated the admission in evidence of Exhibits 1 through 46 was not error.

5. *Conviction of attempted abortion without proof of pregnancy.*

NRS 201.120 provides in part as follows: "Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to

---

[3]NRS 171.235. 1. A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: * * * (c) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

preserve her life or that of the child whereof she is pregnant, shall: 1. Prescribe, supply or administer to a woman, whether pregnant or not, or advise or cause her to take any medicine, drug or substance; or 2. Use, or cause to be used, any instrument or other means; shall be guilty of abortion, * * *."

The indictment charges that appellant "did willfully, unlawfully and feloniously and with the intent to produce the miscarriage of one Grace D. Jose, attempt to use or cause to be used, certain instruments in and upon the body of said Grace D. Jose, the same not being necessary to preserve her life."

It is appellant's contention that the word "whether pregnant or not" appearing in subsection 1 of the statute have no application to subsection 2. With this we do not agree.

Under an identical statute the New York courts have held that a person can be convicted of attempting to commit the crime of abortion under subsection 2 of the statute, when the indictment and proof affirmatively show that the subject was not a pregnant woman. People v. Axelsen, 223 N.Y. 650, 119 N.E. 708; People v. Kellner, 52 N.Y.S.2d 355. See also People v. Cummings, 141 Cal.App.2d 193, 296 P.2d 610.

There being no error, the order denying a new trial is affirmed.

BADT, C. J., and THOMPSON, J., concur.